[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal from an assessment of damages in the amount of $129,000 filed by the defendant Commissioner of Transportation pursuant to the State's condemnation on August 31, 1996 of the plaintiff's real property at 110 Pine Street, Bridgeport, consisting of a .4 acre parcel improved with a 6,840 square foot office/industrial building and two large billboards clearly visible from abutting I-95 highway.
Testimony was elicited from two appraisers, Ronald Glendinning for the plaintiff owner, and, Steven Hurlbutt, for the defendant Commissioner. Both appraisers offered testimony as to the value of the real estate, and also, the value of the billboard signs as personalty and both used both the sales comparison and the capitalization of income approaches.
In the sales comparison approach, the court feels that not only is proximity in time important but just as important is proximity of location.
Using comparable sales data, Hurlbutt first arrived at land value for 17,385 square feet (.4 acre) in the amount of $75,000 after what he considered proper adjustments. The court is not impressed with the comparable sales used by Hurlbutt. Two such sales are in different towns, Strafford and Milford. The third is in the East End of Bridgeport some miles from subject property in the West End.
Insofar as the building area of 6,840 square feet is concerned, Hurlbutt found the depreciated value to be $83,288. Again, he used comparables, only one on Bostwick Avenue being in fairly close proximity to the subject property. Adding the land value and depreciated building value plus an amount of $100,000 for the billboard value he arrived at a total damage figure of $257,000.
Using the capitalization of income approach, with a capitalization rate of 14% and net operating income of $20,930, he arrived at a value of $150,000 for the real property plus improvements. Adding $100,000 for the leased billboard, he arrived at a value via the income capitalization approach of $250,000. Based on both appraisals, Hurbutt arrived at a value of subject property in the amount of $255,000, "as if clean." This latter reference is to an Environmental Risk Cost estimate prepared for the defendant by Storch Associates and known as the CT Page 2318 Storch report This report determined that due to contamination, the property was subject to a maximum cost liability of $110,600 for cleanup, and, it is significant that Hurlbutt was asked to deduct this amount from his valuation of the property. As a result, Hurlbutt's final value estimate is $144,350.00 for subject real estate and personal property.
Let it be stated at the outset that the court is not persuaded by the claim that there is remedial action required for contamination of the soil. The only reason Hurlbutt deducted $110,650 for this item was the request that he do so. Based on the copy of the Storch letter at the conclusion of Hurlbutt's report and plaintiff's Exhibit B which is a report of ASW Environmental Consultants and the testimony of Jason Sarajak, a civil and environmental engineer the court finds that Hurlbutt's deduction was not warranted by the evidence.
Ronald Glendinning testified for the plaintiff, Pine Street, also using the sales comparison and capitalization of income methods in his sales comparison approach. Glendinning used four comparable, three of which were in close proximity to subject property. Instead of arriving at separate valuations for the land and the building, as did Hurlbutt, Glendinning, using his four comparables, arrived at an adjusted mean value of $32.00 per sq. ft. of the building area, inclusive of the land. As a result, he opined the market value of the building area, inclusive of the land to be $220,000.
With respect to the billboards, using a capitalization rate of 9.5%, applied to the first years net income of $30,000 (2500 per mo. x 12) he arrived at a billboard value of $315,719, which he rounded off to $320,000. Thus, his opinion of the market value of the property, including the billboard income was $540,000.
With respect to the income approach, Glendinning first made a study of comparable industrial/office space in Bridgeport. He then compared and adjusted and found that market rent for the first floor industrial areas was $3.50/sq. ft. for 4,332 sq.ft. and that market rent for the second floor office space of 2,508 sq.ft. was $8.50/sq.ft. He then found gross income for the first floor to be $15,162 and gross income for the office second floor to be $21,318, totaling potential gross income of $36,480. Deducting expenses such as vacancy loss, management costs, taxes, repairs and maintenance and insurance he estimated total expenses at $15,363, thus leaving a net operating annual income of $19,293 CT Page 2319 for the first year. His final evaluation of market value for the real estate based on the capitalization approach and a rate of 10%, was $198,680, rounded to $200,000.
Adding the value of the land at $200,000 to the value of the billboards at $320,000, Glendinning's overall of subject property, via the income approach was $520,000.
The court places more reliance in Glendinning's opinions than that of Hurlbutt's. Glendinning's comparables are much closer to subject property than Hurlbutt's. Hurlbutt's capitalization rate of 14% does not appear realistic. On the other hand, the court feels, based on a case heard by this court involving property in the immediate vicinity to subject property, a capitalization rate of 11.7% would be more appropriate than Glendinning's rate of 9.5%. See Baldyga v. West End Community Development Corporation, CV97-0345894S, Superior Court at Bridgeport.
Additionally, in his income approach, Hurlbutt deducted 20% for vacancy and collection items and 15% for other expenses. There may be no quarrel with a 15% ratio for other expenses, but it would have been nice if such expenses were itemized. At any rate, Hurlbutt has arrived at net operating income of $20,930, which capitalized at 14% resulted in his opinion of $150,000 for the land value by the capitalization method.
Finally, in arriving at his billboard value of $100,000, Hurlbutt erroneously used a monthly rental of $2,100, which had been increased to $2,500 August 21, 1996.
Insofar as Glendinning's approach, as is pointed out in defendent's brief, he used $8.50/sq. ft. for office space, and which of course, afforded him an increased net operating income, which in turn increased his land value.
With respect to the capitalization of income method, as has been noted, Glendinning used a capitalization rate of 9.5%. As has been further noted, the court considers 11.7% to be a more appropriate rate.
The court realizes that it would be difficult to substantiate its conclusions mathematically or by appraisal technique, but paraphrasing what one lawyer noted for his expertise in eminent domain matters said, "Until some appellate court says otherwise, the market value of real estate in eminent domain is what the CT Page 2320 referee says it is!"
The court finds the value of the subject real estate, inclusive of the billboard to be $425,000. $129,000 deposited has been withdrawn, leaving a balance due to the plaintiff of $296,000 together with the sum of $7,000 for appraisal fees. Judgment may enter accordingly with statutory interest from the date of taking to the date of payment.
BELINKIE, J.R.